**THOMAS F. X. DUNN**
**ATTORNEY AT LAW**
**7 DEY STREET**
**SUITE 804**
**NEW YORK, NEW YORK 10007**
TEL: 212-941-9940
FAX: 212-941-9947

**By ECF & FAX**

May 22, 2008

Honorable Colleen McMahon
United States District Judge
United States District Court
Southern district of New York
500 Pearl Street
New York, New York 10007

      Re: United States v. Iqbal Mirza,
           07 Cr. 357 (CM)

Dear Judge McMahon:

      Please accept this letter in lieu of a more formal submission on behalf of Iqbal Mirza, ("the defendant") pertaining to his sentence presently scheduled for May 27, 2008. Mr. Mirza has no objection to the sentencing calculations set forth in the pre-sentence report ("PSR"), which are in agreement with the guideline calculations stipulated to in the written plea agreement entered into between the government and the defendant. The defendant acknowledges that the applicable advisory guideline range is 37-46 months.

      The defendant does object to the conclusion in paragraph 35 that he, like defendant and pharmacy owner Dinesh Shah, was an organizer/leader of this fraudulent conspiracy. Although the written plea agreement sets forth that Mirza stipulated that under United States Sentencing Guideline (U.S.S.G.) 3B1.1( c ) there should be a two point enhancement since "…the defendant was an organizer, leader, manager, or supervisor of criminal

1

Honorable Collen McMahon
May 22, 2008
Page 2

activity…," the fact is that the word "or" is used in the agreement in which his role can and is distinguished. Stipulation to that sentence in the plea agreement does not result in the admission that Mirza was a leader/organizer.

### Objection In Addendum To Description as Leader/Organizer

The defendant, although agreeing that there should be a two level increase for his role in the offense under Guideline section 3B1.1( c ), objects to the description in the Addendum section to the PSR where it is set forth at page 29 under the heading marked <u>Justification</u>, that "Mirza was an organizer/leader of a scheme that transpired over the course of almost five years…."

In the Government's letter dated May 16, 2008 it is noted at page 2 that, "Mirza expressly acknowledged participating in the scheme for two years…," not five years as set forth in U.S. Probation's Addendum. The government also writes in its letter to the Court that "[f]ar from being a mere participant in the scheme, the defendant played a critical, supervisory role as he acknowledged in his plea agreement,…" The defendant takes exception to the government's use of the adjective "critical," but acknowledges his supervisory role over a two year period, which requires a two point enhancement under the United States Sentencing Guidelines. (U.S.S.G.)

It is significant to note that the government describes Mirza to the Court in its letter in the following way, "…he worked as a pharmacy technician and sometimes manager. The guidelines do not account for one spending minimal time as a "manager". Therefore, under role adjustment Mirza is treated like Dinesh Shah, the brains behind the operation. Mirza simply was Dinesh Shah's lackey.

The only leader/organizer of this fraudulent conspiracy was the pharmacy owner, Dinesh Shah. Although Dinesh Shah was the owner and pharmacist and directed and supervised the actions of defendant Mirza, both men fall into the same guideline range. The pharmacy owner was the defendant who obtained the overwhelming bulk of the fruits of this fraud.

Honorable Colleen McMahon
May 22, 2008
Page 3

Monetary gain is not accounted for although the fraudulent loss is under U.S.S.G. 2B1.1(b)(1)(I). The fraud totaled $1.1 million and it is doubted that the government will disagree that the overwhelming fruits of the fraud went into Dinesh Shah's pocket.

The fact is that Shah paid very little money to Mirza for his involvement in this conspiracy. Defendant Shah, the owner of the pharmacy, received a sentence of 37 months, which the Probation Department recommends to the Court as an appropriate sentence for defendant Mirza.

**Exceptions to the Government's Letter of May 16, 2008**

The defendant acknowledges as set forth by the government that his criminal conduct was serious. The defendant does take exception to the government's description of his criminal conduct as "extensive."

As acknowledged in his written plea agreement the defendant was a manager or supervisor of criminal activity during the conspiracy. Two factors, however, must be kept in mind. First, as set forth in the government letter at page 1-2, Mirza "…worked as a pharmacy technician and <u>sometimes</u> as a manager. Second, Mirza, as acknowledged in his plea allocution, and not disputed by the government, participated in the conspiracy for two years of the five year period that the conspiracy progressed.

**Mirza Seeks a Reasonable Sentence pursuant to 18 USC 3553(a) factors, and the Supreme Court holdings in *Booker, Kimbrough and Gall***

Two recent Supreme Court decisions impact the case at bar. In *Kimbrough v. United States*, 2007 U.S. LEXIS 13082, the defendant had pled guilty in the United States District Court to offenses involving both powder and crack cocaine. The District Court Judge sentenced Kimbrough below the advisory Guideline range. The Appellate court reversed based upon a finding that the District Court imposition of a sentence outside the

Honorable Colleen Mcmahon
May 22, 2008
Page 4

Guideline range was *per se* unreasonable, because it was based on the crack/powder disparity.

      The Supreme Court held that the cocaine Guidelines are advisory only, and that the Fourth Circuit erred in holding the crack/powder disparity effectively mandatory. It found that while a District Court Judge must include the Guideline range in the array of factors warranting consideration, the Judge may determine that in a particular case, a within-Guidelines sentence is greater than necessary to serve the objectives of sentencing under 18 USC section 3553(a).

      In *Gall v. United States*, 128 S. Ct. 586; 2007 Lexis 13083, the defendant had pled guilty to a conspiracy to distribute ecstasy. The Guidelines called for a sentence range of 30 to 37 months. The District Court sentenced the defendant to 36 months probation, finding that probation reflected the seriousness of the offense, imprisonment was unnecessary because of his voluntary withdrawl from the conspiracy and his post offense conduct reflected that he would not return to criminal behavior and was not a danger to society. The Eighth Circuit reversed on the ground that a sentence outside the Sentencing Guideline range must be – and was not in that case – supported by extraordinary circumstances.

      The Supreme Court held that because the Guidelines are now advisory, appellate review of sentencing decisions is limited to determining whether those sentences are reasonable, citing *United States v. Booker*, 543 U.S. 220, 125 S. Ct. 738, 160 L.Ed. 2d 621, and an abuse-of discretion standard applies to appellate review of sentencing decisions. Under that standard the Circuit Court was limited to determining whether the District Court abused its discretion in determining that the section 3553 (a) factors supported the sentence and justified a substantial deviation from The Guideline range. The Supreme Court found that the Eighth Circuit gave virtually no deference to the District Court's decision that the variance was justified, and further found that while the Circuit clearly disagreed with the District Court's decision, it was not for the Circuit to decide *de novo* whether the justification for a variance is sufficient or the sentence reasonable. The Supreme Court reversed.

Honorable Colleen McMahon
May 22, 2008
Page 5

The recent Supreme Court decisions drive home the fact that the Guidelines are truly advisory and simply one factor to be considered by the Court in determining an appropriate sentence under 18 USC section 3553 (a). Under this authority, for example, it would not be *per se* unreasonable for the Court to find that the guideline range pertaining to Mr. Mirza is too harsh when compared and contrasted with the role and involvement of Dinesh Shah, who is at the same advisory guideline range of 37-46 months. In fact to sentence Mirza to a considerable less time than Shah would not be unreasonable under the authority annunciated in *Kimbrough* and *Gall*.

Besides the disparity in the involvement and roles of Shah and Mirza there are several other 3553(a) factors which establish that a sentence of less than 37 months would be a reasonable sentence.

**18 U.S.C. 3553 (a) Factors which Speak to a More Reasonable Sentence**

As a result of *United States v. Booker*, Districts Courts returned to the factors set forth in 18 U.S.C. 3553(a) in arriving at reasonable sentences. As set forth above *Kimbrough* and Gall strengthen the reliance of these factors in arriving at a fair and reasonable sentence.

In *Booker*, the Supreme Court held that *Blakely v. Washington* applied to the federal sentencing guidelines, and the Sixth amendment's jury trial guarantee prevented judges from finding facts that exposed a defendant to increased prison time.

As a remedy, a different majority of the Court excised the provision of the Sentencing Reform Act that made the Guidelines mandatory, 18 U.S.C. section 3553(b). The remedial majority held that the district courts must still consider the guideline range, 18 U.S.C. section 3553(a)(4) & (5), but also must consider the other directives set forth in section 3553(a). Of course this is clearly set forth in *Kimbrough* and *Gall*. Thus under those cases and *Booker*, courts must treat the guidelines as just one of a number of sentencing factors. Section 3553(a) requires courts to "impose a sentence sufficient, but not greater than necessary, to comply with the purposes set

Honorable Colleen McMahon
May 22, 2008
Page 6

forth in paragraph 2." Section 3553(a)(2) states that such purposes are: (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; ( C ) to protect the public from further crimes of the defendant;  (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

Section 3553(a) further directs sentencing courts to consider (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2)(D) to provide the defendant with needed educational or vocational training, medical care or other correctional treatment in the most effective manner; (3) the kinds of sentences available; (4) reference to the guidelines; (5) reference to pertinent policy statements of the Sentencing Commission and (6) the need to avoid unwanted sentencing disparities among defendants with similar records who have been guilty of similar conduct.

The directives of *Booker*, *Kimbrough, Gall* and section 3553(a) make clear that courts may no longer uncritically apply the guidelines.

**Mirza's History**

The first factor to consider is the history of the defendant. Part of Mr. Mirza's history is the condition of his health, which has deteriorated for years because of his poor heart condition.

Submitted with this letter is a letter from the defendant's Heart doctor dated February 20, 2008.  A copy of this letter was previously provided to the U.S. Probation Officer and is referenced in the PSR at paragraph 72, page 19.  The letter was written by Dr. Emad F. Aziz of the Cardiology Department at St. Luke's Hospital, part of the University Hospital of Columbia University College of Physicians and Surgeons.

Honorable Colleen McMahon
May 22, 2008
Page 7

Dr. Aziz advises that Mr. Mirza has been a patient at the hospital's cardiology department for over 5 years. He describes Mr. Mirza's medical history to be very complicated. His history reflects a significant history of "…high blood pressure, diabetes, high cholesterol, severe coronary artery disease with a previous history of multiple heart attacks which led to severe deterioration and weakness of his left ventricular function with LV function 40%."

The letter from Dr. Aziz sets forth the history of coronary bypass operations, which have failed to improve Mr. Mirza's condition. In 1996 the defendant was referred for a three vessel coronary artery bypass surgery. Coronary artery bypass graft surgery is advised for selected groups of patients with significant narrowings and blockages of the heart arteries. This type of bypass surgery creates new routes around narrowed and blocked arteries, allowing sufficient blood to deliver oxygen and nutrients to the heart muscle.[1]

Dr Aziz wrote "[u]nfortunately, giving his nature of disease progression, he continued to have significant angina and he underwent another cardiac catheterization in September of 2007 and was found to have occluded one of his grafts and severe stenosis on another graft." Occluded is defined as to cause to become closed.[2]

Stenosis is the narrowing of the carotid arteries. These are the main arteries in the neck that supply blood to the brain. Carotid artery stenosis, also called carotid artery disease, is a major risk factor for ischemic stroke, which is the most common form of stroke and usually caused by a blood clot plugging the artery.[3]

Dr. Aziz' letter makes the following evaluation, "Mr. Mirza extent of disease makes him a *high risk for another heart attack or furthermore sudden cardiac death*, he is currently dependent on his extensive daily

---

[1] See, *MedicineNet.Com* for decription of coronary artery bypass graft surgery.
[2] See, *thefreedictionary.com/occluded* for the definition of occluded.
[3] See, *americanheart.org* for the definition of carotid artery stenosis.

Honorable Colleen McMahon
May 22, 2008
Page 8

regimen of heart medications including multiple doses of nitroglycerine for relief of his angina symptoms."

Dr. Aziz concludes his letter setting forth that "Mr. Mirza's condition is very critical and *every effort should be made not to exaggerate or precipitate further deterioration of his cardiac status."* It is submitted that the defendant's placement in any federal facility to serve a sentence of incarceration invites a situation that may very well exaggerate or precipitate a further deterioration of his cardiac status. It can be inferred from this letter that placing Mr. Mirza inside a federal facility will result in a fatal heart attack.

At the same time it is possible that during the next three years that if Mr. Mirza is permitted to remain at liberty under a sentence of probation or supervised release, that he may die of a fatal heart attack as well. There is an excellent chance that whether Mr. Mirza receives 12 months incarceration 37 months incarceration, or no jail time, that he may die before 37 months or even 60 months.

The Government in their letter fails to address the rationale of 18 USC section 3553 (a), and also fails to address the holdings and philosophies of *Booker, Kimbrough and Gall*. The government instead relies on case law and guideline philosophy that pre-dates *Blakely v. Washington*, which with *Apprendi v. NewJersey*, started the courts on a road to advisory guidelines and judicial independence in sentencing.

The government insists that "[t]here is nothing remarkable about this defendant's background or characteristics meriting either a downward departure or non-Guidelines sentence." The government is wrong. They try to rely on outdated case law to support a guideline sentence. They speak of departures from the guidelines when none is sought, and the defendant refrains from such outdated terminology. Admittedly, a number of the reasons that the defendant presents to the court would have been not only frowned at under the mandatory guideline system and the case law, but it would have been strongly recommended to reject such arguments. Extraordinary and exceptional reasons and circumstances were required

Honorable Colleen McMahon
May 22, 2008
Page 9

under the old system to give a fair sentence to a person in Mr. Mirza's condition and situation.

     The Supreme Court of the United States changed the landscape in their resounding decisions in *Gall and Kimbrough* in which the view of the Circuits requiring exceptional circumstances to give a non-guideline sentence was rejected outright. The government writes that "[f]or medical conditions, the standards for a downward departure are 'strict,' and cite a Second Circuit case decided before the Millenium. The government further fosters their position in the same reference by stating according to the Second Circuit in order to depart it is required that a medical condition be one that the Bureau of Prisons is unable to treat. The Supreme Court trumped the authority of the Second Circuit in that case. Again, this is not a departure application, this application is made pursuant to 3553(a) and the recent Supreme Court decisions, which state that the guidelines are only one factor to consider in arriving at a fair and reasonable sentence.

     Treatment in or out of jail is not the issue. The issue is a possible death penalty in jail or out of jail for Mr. Mirza. Justice and mercy cry out for a non custodial sentence. The government states that the defendant has made no proffer that his condition cannot be treated. How is treatment defined. There will be no improvement either at a federal hospital or at St. Luke's in New York City. I as a non-medical observer have had numerous opportunities to observe Mr. Mirza during rather stress filled conversations between a lawyer and client concerning how to handle the defense and entry of a guilty plea in this case. Based upon my observations and having been advised of his condition, and the failure of operations to improve or resolve it, there were a number of occasions when I thought the next moment would lead to a medical emergency. I also observed Mr. Mirza's breathing patterns after traveling to my office by subway from 125th street in Manhattan. I am not optimistic concerning his health over the next 5 years, much less the next 37 months, and it is clear that the cardiology Department of St. Luke's Hospital is not optimistic either.

     The Probation Department is in lockstep with the United States Attorney's Office concerning Mr. Mirza's heart condition and the treatment

to be received.  In the <u>Justification</u> section concerning its recommendation for a 37 month sentence the department sets forth the following, "The Bureau of Prisons has five Federal Medical Centers (FMCs), where Mirza's health can be closely monitored during his incarceration.  In fact, we respectfully suggest that the Court recommend that the Bureau of Prisons designate the defendant to an FMC, so as not to risk compromising his health.  It is unclear how or why the Probation Department finds the confidence to state that Mr. Mirza's health will not be compromised at a FMC.

The fact is the odds are excellent that Mr. Mirza's heath will be compromised anywhere.  It is a sad situation. Whether placed in an FMC, or house arrest on a farm in Pennsylvania, Mr. Mirza's condition will not improve.  Could it remain the same – possibly, but the prospects are bleak for many more years of life.

The defendant is not making the application for a non-jail sentence because the federal facilities will not be able to treat him.  The fact is no one knows whether it can or cannot or if the Cardiology Department at St. Luke's can or cannot.  The health issue is presented to the Court because it is submitted a 37 month sentence may very well be a death sentence.  There is no way federal facilities or any hospital or Cardiologist can prevent that.  All efforts and treatments have been tried by the best cardiologists.  The heart procedure conducted in September was unable to cure or even slightly improve the defendant's condition.  He is beyond being helped by any future procedures that are presently available.

**Other factors**

**Aberrant Behavior**

The defendant is a 55 year old American citizen, who is a college graduate.  This is his first arrest and conviction.  He has led a law abiding life prior to his entry into this conspiracy.

Honorable Colleen McMahon
May 22, 2008
Page 11

### Employment at MLK Pharmacy

The government voices outrage at the fact that the defendant was a Medicaid recipient and failed to advise Medicaid officials that he was gainfully employed. The fact is Mr. Mirza made insignificant amounts of money not only from his employ at MLK but from the fruits of the fraud itself. The defendant's Social Security benefits stopped in March, 2008.

### Family Circumstances

Mr. Mirza is married and the father of children ages 6 through 14. Ms. Shahida Mirza, the defendant's wife, advised U.S. Probation that she was very scared concerning the prospects of her husband's incarceration. The PSR sets forth that his wife said "…they have been together for 14 years, and they go everywhere together, as a family; she stated that she does not know what they will do if her husband is not with them." (PSR p. 18 par.68)

In a letter provided to Probation which is cited in the PSR at Par. 69, MS. Mirza wrote that she is concerned for her children's growth as people since their father will not be there to assist them with their homework, which he does on a daily basis.

Again the government resorts to old arguments in their letter which submits that family circumstances should not be considered by the Court. The government cites a Second Circuit case to support a challenge to a departure argument. No such argument for a departure is submitted instead the defendant requests the Court to consider the recent Supreme Court holdings and the factors of 3553(a) in arriving at a fair and reasonable sentence.

### Non-Jail Sentence

Based on the factors submitted to the Court the defendant submits that when the court weighs the factors of 18 USC section 3553(a), the facts of this case, the role of the defendant in relationship to the pharmacy owner,

Honorable Colleen McMahon
May 22, 2008
Page 12

who the guidelines treats as an equal, that a reasonable sentence is a non-custodial sentence. A reasonable sentence, it is submitted, is a period of three years of House Arrest followed by three years of supervised release.

      The Supreme Court provided District Court Judges with discretion in sentencing.  The Supreme Court provided a level of discretion that did not exist pre-*Blakely* and pre-*Booker*.  *Booker, Gall* and *Kimbrough* permit District Court judges to reflect compassion in sentencing.  The defendant requests the court to issue a non-jail sentence which under the circumstances will comply with the tenets of 18 U.S.C. section 3553(a) which sets forth that courts should "impose a sentence sufficient, but not greater than necessary, to comply with the purposes of section 2 of 3553.

## CONCLUSION

      The defendant requests that the Court sentence him to three years of House Arrest based on the factors presented in this letter.  Most importantly, it is submitted that the defendant's medical condition, not the treatment for that medical condition, is the key factor presented in his argument for a sentence of House Arrest.

      Respectfully yours,

      /s/
      Thomas F. X. Dunn

cc: William Stellmach, Esq.(by fax & ECF)
    Assistant U.S. Attorney

    Seetha Ramachandran, Esq.(by Fax & ECF
    Assistant U.S. Attorney

    Emily Frankelis
    Senior U.S. Probation (by fax & ECF)